Pablo ARIAS, Appellant,

v.

MHI PARTNERSHIP, LTD. d/b/a Plantation Homes, and McGuyer Homebuilders, Inc., Appellees.

No. 13–97–416–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1998.

Rehearing Overruled Oct. 8, 1998.

---

1. *See* Tex.R.App. P. 47.1.

James B. Ragan, Corpus Christi, for Appellant.

A. David Carlson, Nathan M. Rymer, Carlson & Smith, Marvin C. Moos, Houston, for Appellee.

Dan Johnston, Sullins, Johnston, Rohrbach & Magers, Houston, for Intervenor.

Michael Maldonado, Law Office of Warren L. Eddington, Corpus Christi, for Amicus Curiae.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

YAÑEZ, Justice.

Pablo Arias brings this appeal from a summary judgment rendered in favor of MHI Partnership Ltd. d/b/a Plantations Homes (hereinafter "MHI"), and McGuyer Homebuilders, Inc., in his personal injury suit. Arias was injured while working at a site where appellees were the general contractors. By granting summary judgment, the trial court rejected Arias's contention that the defendants had assumed a duty of care over the work-site, but breached that duty, and he was harmed as a result. We affirm the summary judgment.

Arias was employed by Salvador Guevara to construct framework on residential houses. Guevara had been hired as an independent contractor by MHI. Arias fell while doing his framing work, sustaining a head injury, and incurring medical bills amounting to $112,000 for treatment provided by Hermann Hospital. He contends that MHI and McGuyer Homes are, for practical purposes, one entity, and he treats them as such in his brief. He alleged in his petition that his injuries resulted from MHI's failure to provide a safe place to work, and its failure to enforce safety requirements on the work-site. The defendants moved for, and obtained a summary judgment.

A summary judgment movant must show there is no genuine issue concerning a material fact which would entitle the movant to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). A defendant who conclusively negates at least one essential element of a plaintiff's claim or who conclusively establishes all the elements of an affirmative defense is entitled to summary judgment. *Wornick Co. v.. Casas*, 856 S.W.2d 732, 733 (Tex.1993). However, in reviewing a summary judgment, all evidence is to be construed in favor of the nonmovant, to whom every reasonable inference is allowed and on whose behalf all doubts are resolved. *El Chico v. Poole*, 732 S.W.2d 306, 315 (Tex. 1987).

■ ■ A general contractor on a construction site, who is in control of the premises, is charged with the same duty as an owner or occupier. *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425, 431 (1950). An owner or occupier of land has a duty to use reasonable care to keep the premises under its control in a safe condition. *Id.* This duty to keep the premises in a safe condition may subject the general contractor to direct liability for negligence in two situations: (1) those arising from a premises defect, (2) those arising from an activity or instrumentality. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417–18 (Tex.1985).

This is not a premises defect case. Rather, it involves an injury caused by an activity conducted on the premises. Arias contends that MHI negligently exercised control of the safety regime it had implemented, and retained the right to enforce. MHI argues that there was no evidence the safety rules were even in effect at the time of the injury, and that, even if they had been, they would not give rise to any liability in and of themselves, given the facts of the case.

■ ■ Generally, an owner or occupier does not have a duty to see that an independent contractor performs work in a safe manner. *Abalos v.. Oil Development Co.*, 544 S.W.2d 627, 631 (Tex.1976). However, an exception exists where the general contractor exercises some control over a subcontractor's work. In such case, it may be liable unless it exercises reasonable care in supervising the subcontractor's activity. *Redinger*, 689 S.W.2d at 418. Texas has adopted the rule

set out in the Restatement (Second) of Torts, which states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414 (1977). The rule applies when the employer retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master. *Id.* at comment (a). The employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports. *Id.* at comment (c).

The crux of Arias's case is that MHI, by creating a safety regime, by contractually obliging its subcontractors to observe that regime, and by reserving a right to inspect, correct, fine, and even fire its subcontractor for noncompliance with it, assumed a duty of care to the employees of its subcontractors, and that it breached that duty. Arias alleges that, had MHI enforced its safety regulations, he would have been wearing a helmet when he was working, and perhaps could have avoided injuring his head as severely as he did.

Our disposition of this cause is guided in large part by the Texas Supreme Court's recent decision in *Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354 (Tex.1998), where it specifically addressed what duty, if any, is owed by a general contractor that promulgates, and retains the right to ensure compliance with, general safety guidelines. The court noted numerous appellate decisions which have held an employer does not incur a duty of care by requiring its contractor to comply with the employer's standard safety practices and applicable laws. *Id.* 967 S.W.2d at 357 (citing *Davis v. R. Sanders & Assoc. Custom Builders, Inc.,* 891 S.W.2d 779, 782 (Tex.App.—Texarkana 1995, no writ); *Campbell v. Adventist Health System/Sunbelt, Inc.,* 946 S.W.2d 617, 623 (Tex.

App.—Fort Worth 1997, no writ); *Welch v. McDougal,* 876 S.W.2d 218, 223 (Tex.App.—Amarillo 1994, writ denied); and *Good v. Dow Chem. Co.,* 945 S.W.2d 877, 882 (Tex. App.—Houston [1st Dist.] 1997, no writ)). Contrary to these opinions, however, the court concluded that a general contractor which promulgates safety rules and requirements does assume a narrow duty of care, but that duty is commensurate with the control it retains over the independent contractor. *Hoechst–Celanese,* 967 S.W.2d at 357.

■ It further noted the importance of a nexus between an employer's retained supervisory control and the condition or activity that caused the injury. *Id.* (citing *Williams v. Olivo,* 952 S.W.2d 523 (Tex.1997)). The scope of the duty is limited to the scope of the employer's retained supervisory control. *Hoechst–Celanese,* 967 S.W.2d at 357. Applying this rule to the facts before it, the court found that there was no evidence that the rules or requirements themselves unreasonably increased the probability and severity of injury, and, consequently, there was no basis for liability as a matter of law. *Id.* at 358.

■ Thus, the rule authored by the supreme court is that, when an employer promulgates a safety rule or regime, it assumes a narrow duty—to ensure that its rules or requirements are reasonably safe. *See id.* If the rules or regulations do not unreasonably increase the probability and severity of injury, no duty is violated. *Id.* If, however, the general contractor is aware that a subcontractor was ignoring safety guidelines, or if the general contractor is involved in giving on-site orders or directing the manner of performance, then it may be charged with a heightened duty of care, to either take corrective measures or otherwise protect workers from hazards associated with their job. *Id.* (citing *Tovar v. Amarillo Oil Co.,* 692 S.W.2d 469, 470 (Tex.1985), *Enserch Corp. v. Parker,* 794 S.W.2d 2, 6 (Tex.1990), and *Redinger,* 689 S.W.2d at 418).

### Analysis

■ Arias fell from the roof framing he had built at the work-site. MHI presented as evidence Arias's deposition testimony,

wherein he stated that no one from MHI gave him any instructions or direction on his framing work. He also testified that no one from MHI had ever provided him with any safety equipment, or any of the tools of his trade. That he might fall from a roof he was constructing is an obvious and apparent risk associated with the job. An owner or occupier who engages an independent contractor is generally not obligated to protect the contractor's employees from hazards that are incidental to, or part of, the work the independent contractor is hired to perform. *Gutierrez v. Exxon Corp.,* 764 F.2d 399, 401 (5th Cir.1985); *Shell Chemical Co. v. Lamb,* 493 S.W.2d 742 (Tex.1973); *Shell Oil Co. v. Songer,* 710 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

The defendants offered as summary judgment evidence the affidavit of Melvin Burdett Lockhart, a construction manager for Plantation Homes, and the project manager with supervisory duties over the subdivision where Arias worked. He averred that Plantation does not actually build any part of the homes they sell, and that it does not instruct the independent contractors on any of the details or specifics of their work. Arias's deposition testimony indicated he took all instructions from Guevara.

■ Where the activity is conducted by and is under the control of the independent contractor and the dangerous activity arises out of the activity of its staff, the duty to protect from hazards is that of the independent contractors and not of the owner of the premises. *Abalos,* 544 S.W.2d 627. He admitted that MHI never instructed him on safety precautions; *i.e.,* it never exercised control of the subcontractors' employees. Arias cites several factors which, he contends, illustrate MHI's retention of rights and exercise of control sufficient to create a duty from MHI to Arias:

1) MHI contractually required its subcontractors (in this case Guevara), to comply with OSHA requirements; if they failed to, MHI would inform them, had the right to fine, or even to terminate them for noncompliance.

2) The MHI manual required the use of fall protection, and specified the methods to be used. It provided for a safety coordinator who would make periodic inspections, determine the extent of any hazards, and develop reports for corporate and independent contractor use.

3) The manual provided for a project manager/construction manager to inspect sites for compliance with various standards, discuss activities necessary to meet those standards, follow-up on compliance, and conduct periodic safety training programs.

4) Industry standards impose on general contractors the duty to enforce safety rule compliance by subcontractors.

5) Guevara said that he did anything MHI told him to do.

6) MHI did exercise control—it sent a memo to all independent contractors reminding them of OHSA requirements.

7) From time to time, MHI gave Arias specific instructions regarding his work.

MHI objected to the consideration of the training manual on the ground that it was not competent summary judgment evidence because it was not properly authenticated, and that it was not even in existence at the time Arias was injured.[1] It also contends that, even taking Arias's contentions as true, no showing has been made to demonstrate a degree of control exercised or retained by MHI necessary to create any liability on its part for his injuries.

Arias is correct that MHI owed him a duty of care. However, of the factors relied on by Arias as proof of exercise of control, most are only evidence that MHI had assumed the narrow duty articulated by the supreme court in *Hoechst–Celanese*—to ensure its rules and regulations were reasonably safe. That MHI required its subcontractors to comply with OSHA requirements, and reserved the right to fine or terminate employment for noncompliance raised only a narrow duty to ensure that such rules were not

---

**1.** The existence of a fact issue on this question is not essential to our disposition, however, for reasons stated below.

 

unsafe. Similarly, MHI's policy, which specified methods for fall prevention, is not tantamount to an exercise of control. Had MHI assumed the duty to train and actually supervise the employees of the subcontractors, it may have assumed a heightened duty of care. However, it merely assumed the duty of training the subcontractors, then left implementation of the safety regime to them, retaining the right to make periodic inspections.[2] This is not tantamount to exercising any greater control than did the defendant in *Hoechst–Celanese* and, therefore, does not warrant any heightened duty of care. Arias presented no evidence that MHI's rules, regulations or policies were unreasonable.

Guevera's comment that he did anything MHI told him to do is not evidence of an exercise of control over Guevara's work. The comment is inescapably vague. It does not indicate that MHI ever did tell him what to do, nor does it indicate that what MHI told him to do had anything to do with the performance of particulars of his contracted-for work. Every general contractor has to "tell" the subcontractor what to do, in general terms, and may do so without subjecting itself to liability. *Redinger*, 689 S.W.2d at 418. Such right does not create a duty, nor expand the scope of the duty beyond that as expressed in *Hoechst–Celanese.*

Arias's comment that MHI periodically gave specific instructions of the work to be performed is likewise insufficient to create a fact issue. Arias did not present any evidence establishing a nexus between the instruction, or any of MHI's rules, and his injuries. Therefore, he failed to establish evidence of a causal relationship between any occasional instruction, and his injuries. Stated another way, he did not present any evidence which showed that the rules, regulations, or procedures purportedly in effect at the time contributed in any way to his injuries. Rather, his allegations imply the converse—that he would not have been hurt as badly if he and Guevara had adhered to the rules which they were instructed to observe. MHI never sought to control those aspects of job performance on a day-to-day level.

### Conclusion

We hold that MHI owed a narrow duty to the employees of its subcontractors because it retained a right to control various safety related aspects of the subcontractor's work performance. However, the uncontradicted evidence demonstrated that MHI only retained a general right of control, did not direct the employees of the subcontractors, and did not provide Guevara's employees with safety equipment. Thus, as a matter of law, there was no basis for imposing liability on MHI or McGuyer Homes for the injury Arias sustained.

The judgment of the trial court is affirmed.

---

**2.** The contract between MHI and Arias provided that Guevara was "an independent contractor and shall have the sole discretion in the performance of such work, save and except that the same must be performed in accordance with the plans and specifications and the contract agreements." Other courts have treated similar clauses as conclusive evidence that a general contractor did not retain control. *See Hammack v. Conoco*, 902 S.W.2d 127, 130 n. 1 (Tex.App.— Houston [1st Dist.] 1995, writ denied).