**Opinion issued June 25, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00054-CV

_____

## ISRAEL SANCHEZ, Appellant

## V.

## BP PRODUCTS NORTH AMERICA, INC., Appellee

---

### On Appeal from the 10th District Court
### Galveston County, Texas
### Trial Court Case No. 09-CV0224-A

---

### MEMORANDUM OPINION

Israel Sanchez was injured when he fell from scaffolding on a worksite. He filed a negligence suit against the premises owner, BP Products North America, Inc., and the contractor that built the scaffolding, Miken Specialties, Ltd. BP filed

a combined traditional and no-evidence motion for summary judgment on the grounds that chapter 95 of the Texas Civil Practice and Remedies Code barred Sanchez's claims. The trial court granted summary judgment and severed the claims against BP from the suit. On appeal, Sanchez argues that the trial court erred in granting summary judgment because chapter 95 does not apply to his claims, BP did not carry its burden to prove that chapter 95 applies, and material fact issues preclude the granting of summary judgment. We affirm.

## Background

A refinery periodically ceases operations for a "turnaround," during which time maintenance and renovations are completed. In 2008 BP performed a turnaround at its Texas City facility that included an alkylation unit called "Alky 3." To accomplish the maintenance and renovations scheduled for the turnaround, BP contracted with JV Industrial Companies, Ltd. to provide mechanical and piping services and with Miken Specialties, Ltd. to construct the scaffolding that would enable the workers to access the overhead pipes and equipment.

OSHA regulations and BP policies require that scaffolding be inspected and certified by a competent person prior to use. To accomplish this, color-coded tags were affixed to the ground-level ladder on the scaffolding. Red tags indicated a hazard and that the scaffolding was not fit for use, green tags indicated that the scaffolding was fit for use, and yellow tags disclosed hazards that had been

2

observed and identified specific precautions to be taken when using the scaffolding. For example, a cautionary instruction could direct the worker to use "100% tie-off," a fall-protection method in which the worker affixes to the scaffolding a lanyard, which is connected to a body harness and is designed to prevent him from falling to the ground. In addition, JV employees were required to get work permits from a BP operator before beginning their jobs. The BP operator would walk through the work area and inspect for hazards—including a red tag on scaffolding—before issuing the work permit.

Israel Sanchez was working for JV at Alky 3 during the 2008 turnaround. He reported to Julian Flores, who was a piping supervisor for JV. Flores had instructed the scaffold builders to remove some of the boards on the second level of the scaffolding so that JV workers could position a pipe for installation. Sanchez testified that when he ascended the scaffolding, he saw a tag that indicated there was a hole in the deck and that 100% tie-off was required. However, Sanchez was not tied off when he descended from the third level of the scaffolding to the second level. He lost his balance and fell through the open deck to the ground beneath.[1] Sanchez was injured and taken to the hospital, where

---

[1] The summary-judgment evidence conflicts as to whether Sanchez descended by using a ladder that was provided for that purpose and that became detached from the scaffolding poles, or whether he climbed over handrails to get to the second level. The deposition testimony of Sanchez, his coworkers, and his supervisor centered on Sanchez's fault in causing the injury by

3

emergency-room doctors diagnosed him with a deep bruise on his hip. In his deposition, Sanchez described additional injuries resulting from the fall.

Sanchez sued BP and Miken alleging, among other acts of negligence, the failure to provide a safe workplace. BP moved for summary judgment, arguing that under chapter 95 of the Civil Practice and Remedies Code it did not owe a duty to provide a safe workplace to Sanchez. The trial court granted summary judgment, and Sanchez appealed.

## Analysis

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009). A party may combine in a single motion a request for summary judgment under both the no-evidence and traditional standards. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). A party seeking summary judgment under the no-evidence standard must assert that there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). In addition, the movant must specify the elements as to which he contends there is no evidence.

---

failing to follow safety procedures. However, the summary-judgment motion was based on the application of chapter 95 of the Civil Practice and Remedies Code, and therefore Sanchez's contributory negligence, if any, is not relevant to this appeal.

4

*Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581 (Tex. 2006). The burden shifts to the nonmovant to present evidence as to the elements identified in the motion. *Id.* at 582. A genuine issue of material fact exists if the nonmovant produces evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson,* 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005)).

A party seeking summary judgment under the traditional standard bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex. 2003). A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997).

## I.    Chapter 95

In his first issue, Sanchez argues that BP has not carried its burden of proof to show that chapter 95 applies. He reasons that BP's motion for summary judgment did not specifically identify evidence showing that it is the property owner and that his claim "arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates,

5

or modifies the improvement." *See* TEX. CIV. PRAC. & REM. CODE § 95.002 (West 2011). In his second, third, and fourth issues, Sanchez alternatively argues that chapter 95 does not apply and that genuine issues of material fact exist as to its applicability. He argues that his injury arose from scaffolding, which he contends is not an improvement to real property. He also argues he was not renovating the scaffolding as he was merely using it to reach his work site.

### a. Statutory framework

"In a negligence action, a plaintiff must show that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injuries." *Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 121 (Tex. App.—Houston [1st Dist.] 2009, no pet.). "Whether a duty exists is a question of law for the court." *Texas Home Mgmt, Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002)

Chapter 95 codified the general common-law rule that "an owner or occupier does not have a duty to see that an independent contractor performs work in a safe manner." *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 95.001–.004 (West 2012). Section 95.003 provides:

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or

6

property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. "Both conditions of section 95.003 must be met before chapter 95's exception to the general rule of nonliability for a premises owner will be imposed." *Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 132–33 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "[T]he second condition requires actual, rather than merely constructive, knowledge by the premises owner concerning the allegedly dangerous condition." *Id.* at 132.

Under the first condition, "[t]he requisite control can be contractual or actual." *Union Carbide Corp. v. Smith*, 313 S.W.3d 370, 375 (Tex. App.— Houston [1st Dist.] 2009, pet. denied). When a contract gives the premises owner "the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way," the contract may impose a duty of care. *Abarca*, 305 S.W.3d

7

at 123 (citing *Dow Chem. Co v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002)).[2]

"[W]hether a contract gives a right of control is generally a question of law." *Id.* (citing *Bright*, 89 S.W.3d at 606).

In order to have actual control, a property owner must have the right to control the method, manner, means, and operative detail of the contractor's work. *Id.* The control must be such that the "contractor is not entirely free to do the work his own way." *Id.* at 124. In addition, the control must relate to the injury the negligence causes. *Id.* "It is not enough that the owner has the right to order the work to stop and start or to inspect progress or receive reports. Nor is it enough to recommend a safe manner for the independent contractor's employees to perform the work." *Id.* In regard to safety regulation or supervision, a premises owner does not exercise actual control by requiring contractors to follow its safety rules and regulations unless doing so increases the risk of harm. *See Union Carbide Corp.*, 313 S.W.3d at 378; *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 701 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *see also Bright*, 89 S.W. 3d at 607–08.

Chapter 95 applies "only" to a claim:

---

[2]    Because section 95.003(1) codified the common-law holding of *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985), this court has held that pre-chapter 95 case law regarding premises liability for worksite injuries is relevant to chapter 95 cases. *See Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 132–35 nn. 4 & 5 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

(1) against a property owner, contractor, or subcontractor for personal injury, death or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

*Id.* § 95.002. Under section 95.002, the improvement to real property that is the object of the contractor's work need not, itself, be the injury-producing premises defect. *Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 201–02 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (holding that chapter 95 barred recovery when contractor fell from ladder he was using to access roof-mounted air conditioning units he was tasked to repair); *see Phillips*, 186 S.W.3d at 131–32 (holding that chapter 95 barred recovery when decedent fell from scaffolding she used to access location from which she acted as "holewatch and firewatch"). The defendant has the burden to show that chapter 95 applies to the claim, and having done so, the burden of proof shifts to the plaintiff to establish both that (1) the property owner exercised or retained some control over the manner in which the work was performed, and (2) the property owner had actual knowledge of the danger and did not adequately warn of that danger. *Rueda v. Paschal*, 178 S.W.3d 107, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.); TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. Sanchez's first issue erroneously characterizes chapter 95 as

an affirmative defense that BP carries the burden to prove. We overrule Sanchez's first issue.

### b. Applicability of chapter 95 to Sanchez's claims against BP

The original petition filed in the trial court alleged, "The incident made the basis of this lawsuit occurred inside BP's refinery in Texas City, Galveston County, Texas." BP's summary-judgment evidence supports this allegation. BP offered the deposition testimony of Sanchez and of Eulan Armour, a contract safety supervisor who worked during the Alky 3 turnaround. Both depositions reflect that Sanchez's injury occurred at a BP facility, Alky 3, which was shut down for a turnaround. And Sanchez testified that he was working with pipe on a job that involved grinding and welding and required him to use scaffolding to access the specific location of his job assignment.

In *Fisher v. Lee & Chang Partnership*, 16 S.W.3d 198 (Tex. App.—Houston [1st Dist.] 2000, pet. denied), the plaintiff sued for failure to provide a safe workplace, alleging that he was injured when he fell from a ladder while repairing a roof-mounted air-conditioning unit. 16 S.W.3d at 200. This court held that chapter 95 barred his claims against the property owner:

> Sec. 95.003 provides that a property owner is not liable for ". . . injury . . . arising from the failure to provide a safe workplace . . . ." The ladder was an unsafe part of appellant's workplace, and his injury arose from the failure to provide a safe workplace. The statute does not require that the defective condition be the object of the contractor's work. Therefore, by affording the statute its common

10

> meaning, secs. 95.002 and 95.003 are consistent and may both be read to provide protection from liability if the injury arose from the contractor's work on an improvement to real property. Here, it did. Appellant used the ladder to reach the roof to perform his job, the repair of air conditioning units.

*Id.* at 201. This court also noted that scaffolding used to reach a work site would be considered "a tool used for construction, not an improvement that was being repaired or modified itself." *Id.* at 202.

More recently, in *Phillips v. Dow Chemical Co.*, 186 S.W.3d 121 (Tex. App.—Houston [1st Dist.] 2005, no pet.), a contractor died when she fell from scaffolding on a worksite. 186 S.W.3d at 124. Her husband filed a wrongful death and survival suit. *Id.* The court held that chapter 95 applied to his claim. *Id.* at 132. The decedent had been using the scaffolding to access her worksite, where she worked as "holewatch and firewatch" for cleanup, repair, and renovation to the chemical plant. *Id.* This court held that "the scaffolding from which [she] fell was sufficiently related to [her] injuries to bring Dow within the protections of chapter 95." *Id.*

Sanchez's pleadings allege that he was injured while on the job at a worksite defined as BP's refinery in Texas City. It is undisputed that BP owns this premises, that this premises is real property, that BP uses this premises for commercial or business purposes, and that BP was sued in those capacities. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.001(3) (defining "property owner" as

11

"person or entity that owns real property primarily used for commercial or business purposes"). BP's summary-judgment evidence shows that Sanchez was repairing or renovating the Alky 3 unit, an improvement to real property, by doing a job that involved grinding or welding a piece of pipe. It further shows that Sanchez was using the scaffolding to reach his work site. We hold that chapter 95 applies to this claim. *See Phillips*, 186 S.W.3d at 132; *Fisher*, 16 S.W.3d at 202. Sanchez urges this court to adopt the reasoning in *Hernandez v. Brinker International, Inc.*, 285 S.W.3d 152, 157–58 (Tex. App.—Houston [14th Dist.] 2009, no pet.),[3] but we are constrained to follow our own court's controlling authority in *Fisher*. We overrule Sanchez's second, third, and fourth issues.

---

3    The lead opinion in *Hernandez* concluded that "Chapter 95 does not apply to a contractor's employee's claim against a property owner when the improvement is not the same improvement the contractor was at the premise to address at the time of the injury." 285 S.W.3d at 157–58. A concurring justice agreed with the outcome, but explained that he would reach the same result because the appellee failed to establish all the elements of his defense, specifically that the appellee was the property owner. *Id.* at 162–64 (Anderson, J., concurring). The third member of the panel dissented, rejecting "the plurality's narrow interpretation of the concept of improvement that rejects the idea of a building or overall structure as an improvement," and noting that she "would merely hold in this case, Hernandez's injury from falling through the roof in the course of performing work that must be done on the roof is sufficiently related to his reason for being on the premise to be covered by chapter 95." *Id.* at 164–66 (Yates, J., dissenting).

## II. Exceptions to Chapter 95

Having concluded that chapter 95 applies to Sanchez's claim, we turn to his remaining issues regarding the applicability of the statutory exception in section 95.003. Sanchez argues that genuine issues of material fact exist both as to whether BP controlled Sanchez's work and as to whether BP was actually aware of the dangerous condition. We consider the question of control first because it is dispositive of this appeal.

Because Sanchez had the burden of proof on this issue, to be entitled to summary judgment, BP had to conclusively negate control or prevail on a no-evidence challenge. *See Rueda*, 178 S.W.3d at 111. BP's motion for summary judgment argued that there was no evidence that it controlled the work of JV's employees, and in the alternative, that the evidence conclusively negated control under section 95.003(1). As to its argument for summary judgment under the traditional standard, BP relied solely on Sanchez's testimony identifying his immediate supervisor on the job site:

> Q. Okay. Who did you report to at JV? Who was your immediate supervisor?
> A. Julian Flores.
> . . . .
> Q. If you had any questions about your job, Little Sumo, or his supervisor—and Little Sumo is Mr. Flores—that's who you would get—who you would go to as far as any questions you had about your work. Right?
> A. Yes, sir.

Q. If you had—someone was giving you instructions about what to do or how to perform your job, it was going to be Little Sumo or his supervisor. Correct?

A. Yes, sir.

In response to the motion, Sanchez argued that the contract between BP and JV established BP's right of control, based on provisions in the contract that generally gave it a right to start and stop the work, receive progress reports, and require that JV conform to BP's internal regulations. Sanchez also argued that BP exercised actual control through its direct provision of safety supervision to JV employees and through the work permitting system.

As we have noted, control may be established by the parties' contract or by evidence that the premises owner actually controlled the contractor's work. *See Smith*, 313 S.W.3d at 375. Sanchez argues that the contract between BP and JV is evidence of control because it gave BP the following rights:

- the right to require the removal from the work site of an employee that BP deems objectionable;
- the right to periodic reviews of the work;
- the right to change the scope of the work;
- the right to require that JV perform the work in a manner that minimizes interference with BP's operations;
- the right to direct JV to schedule the order of its work to avoid interference with the work of others;
- the right to perform collateral work with its own workforce; and
- the right to require strict compliance with BP's rules.

All of these rights are "broadly supervisory" and do not show the kind of control the statute requires to impose a duty on the premises owner. *Victoria Elec. Co-op.,*

14

*Inc. v. Williams*, 100 S.W.3d 323, 328 (Tex. App.—San Antonio 2002, pet. denied); *see Abarca*, 305 S.W.3d at 123. The statute specifies that the rights to order the work to start or stop, to inspect progress, and to receive reports are not the type of control that would be sufficient to impose liability on the premises owner. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003(1). Therefore, the statute excludes "the right to periodic reviews of the work" and "the right to direct JV to schedule the order of its work to avoid interference with BP's operations" as factors that could establish control. *See id.* Similarly the right to change the scope of the work is akin to the right to start or stop the work and to ensure work is done in accordance with construction specifications. As such, it is not evidence of control because it did not indicate that BP retained the right to control the operative details of JV's work. *See Victoria Elec. Co-op.*, 100 S.W.3d at 328–29. In addition, although requiring JV's employees to comply with BP's rules and reserving the right to require the removal of objectionable employees may create a limited duty to ensure that the company's rules were not unsafe, these actions do not establish that the property owner generally exercised or retained control over the manner in which the work was performed. *See Arias v. MHI P'ship, Ltd.*, 978 S.W.2d 660, 664–65 (Tex. App.—Corpus Christi 1998, pet. denied). Finally, BP also reserved the right to perform collateral work with its own workforce and to require JV to perform its work in a manner than minimizes interference with BP's

15

work. "Every premises owner must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability." *Koch Refining Co. v. Chapa*, 11 S.W.3d 153, 156 (Tex. 1999). And the presence of company employees carrying out company functions does not demonstrate that the company exercised control of the manner in which the contract employees did their jobs. *See id.* Therefore, reserving the right to perform additional work with BP's employees or to require JV to work in a way that minimizes interference with BP's work was not evidence that BP exercised the kind of control necessary for the law to impose a duty on the premises owner. *See id.*

Moreover, Sanchez's argument misleadingly fails to disclose other parts of the contract, the plain language of which specifically negated BP's right to control the work of JV employees:

<u>**ARTICLE 5: RELATIONSHIP OF PARTIES**</u>

5.01  Contractor shall assume all its duties under this Contract as an independent contractor and shall not be deemed for any purpose to be an agent, servant, or representative of Company. *Company shall have no direct control of Contractor, its agents, or subcontractors in the performance of the Work hereunder.* Contractor shall be solely responsible for performance of and shall control all of the details necessary to comply with its obligations under this Contract in a manner consistent with all applicable safety, health, environmental and industry practices and procedures. Nothing contained herein shall be construed to be inconsistent with such independent contractor relationship,

16

and *Company shall have no control over Contractor or its personnel's manner or method of performing the Work.*

As to BP's right to demand removal of an objectionable employee, the contract states that JV "shall nevertheless retain all authority and control over its employees."

## ARTICLE 7:  CONTRACTOR'S PERSONNEL

. . . .

7.03  Any employee of Contractor deemed by Company, in their sole judgment, to be objectionable shall be removed from the Work site immediately upon Company request and shall be promptly replaced by Contractor at no extra expense to Company. *Contractor shall nevertheless retain all authority and control over its employees*, including responsibility for all costs arising from providing reasonable accommodations for its employees.

Affording BP limited rights to receive periodic reports on the progress of the work, to determine the scope of the work that JV performed, to require that the work be done in a safe and efficient manner, and to require the replacement of objectionable employees is not the same as controlling "the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way." *Abarca*, 305 S.W.3d at 123.  The contract itself provides that JV has the right to control its employees and BP does not have the right to control its employees.  Thus, we conclude that the contract is no evidence that BP had a right of control sufficient to satisfy section 95.003(1).  *See Hamilton*, 249 S.W.3d at 426.

17

Sanchez further argues his summary-judgment evidence created a fact question as to whether BP exercised actual control. In its motion for summary judgment, BP relied on Sanchez's testimony that his supervisor gave him instructions about what to do or how to perform his job. In response to the motion, Sanchez produced evidence of BP's safety oversight and inspection. For example, Sanchez testified that he reported safety concerns both to his supervisor and to BP operators.

Sanchez also relied on testimony from Eulan Armour, the safety supervisor, who testified that BP's safety representatives answered questions when needed. But Sanchez did not produce any evidence that BP's safety oversight or rules increased the risk of his injury. A premises owner does not incur a duty to independent contractors by "placing a safety employee on the work site," *Koch Refining*, 11 S.W.3d at 157, or by "promulgat[ing] safety standards and regulations . . . unless there is also proof that they increased, rather than decreased, the possibility of severe injury." *Phillips*, 186 S.W.3d at 136. A premises owner does not exercise actual control by requiring contractors to follow its safety rules and regulations unless doing so increases the risk of harm. *Smith*, 313 S.W.3d at 378; *see Dyall* 152 S.W.3d at 701. Thus, Sanchez's summary-judgment evidence as to BP's safety supervision, oversight, and requirements is no evidence that BP controlled the work of JV's employees.

18

Sanchez also produced evidence of the work permitting system that BP used, including deposition testimony from one of his coworkers who explained that no work could begin until a BP operator issued a work permit. But the use of a work permitting system is not evidence of control. *See Bright*, 89 S.W.3d at 609 ("Dow's general right under the safe work permit system to preclude work from beginning in the first instance is insufficient to establish actual control."). Sanchez's summary-judgment evidence regarding BP's work permitting system is also no evidence that BP actually controlled the work of JV's employees. We conclude that Sanchez's evidence did not create a question of fact as to control. *See Hamilton*, 249 S.W.3d 426. We overrule Sanchez's fifth issue.

Because both elements of section 95.003 must be present for potential premises-owner liability, we hold that the trial court could have properly granted BP's no-evidence motion for summary judgment based on Sanchez's failure to produce some evidence that BP exercised contractual or actual control over his work. We hold that the trial court properly granted summary judgment in this case. Accordingly, we need not address Sanchez's sixth issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.