JOERIS GENERAL CONTRACTORS,
LTD., Appellant

v.

Rolando CUMPIAN, Appellee

No. 04–15–00481–CV

Court of Appeals of Texas,
San Antonio.

Delivered and Filed December 21, 2016

Rebecca Bergeron, Winstead PC, San Antonio, TX, Jeremy Richard Stone, Mehaffy Weber PC, Houston, TX, Marcella A. Della Casa, Thornton Biechlen Reynold & Guerra, San Antonio, TX, Elana S. Einhorn and David B. Gaultney, Mehaffy Weber, Austin, TX, Lorien Whyte, Pozza & Whyte, PLLC, San Antonio, TX, for Appellant.

Dava Greenberg–Spindler, Kelly, Durham & Pittard, L.L.P., San Antonio, TX, Thad D. Spalding, Kelly, Durham & Pittard, LLP, Dallas, TX, Ryan Allan Todd, Brian C. Steward, Johnny Morris Moore, Richard Scott Westlund, Ketterman Rowland & Westlund, San Antonio, TX, for Appellee.

Sitting: Sandee Bryan Marion, Chief Justice Luz Elena D. Chapa, Justice Jason Pulliam, Justice

## OPINION

Jason Pulliam, Justice

### INTRODUCTION

This appeal arises from an action brought against Joeris General Contractors, Ltd. (Joeris) by Rolando Cumpian, an employee of an independent contractor who was injured on a job site. Cumpian sued Joeris for negligence and gross negligence alleging Joeris failed to reasonably enforce its safety regulations and failed to protect Cumpian by allowing his co-worker, someone known to have violated safety regulations in the past, on the jobsite. A jury found in favor of Cumpian and awarded actual and exemplary damages.

We conclude, as a matter of law, Joeris did not incur the narrow duty to Cumpian recognized by the Texas Supreme Court in *Hoechst–Celanese Corp. v. Mendez* based upon Joeris's right to control the promulgation and enforcement of safety regulations. Joeris's knowledge of an independent contractor's safety violations in the past did not trigger the exception to the well-established rule that a general contractor has no duty to ensure an independent contractor safely performs its work. In addition, Joeris's limited discussion regarding the priority of work to be completed did not trigger this exception. Because Joeris held no duty as a matter of law, the jury finding that Joeris was negligent was

in error. Accordingly, we reverse the trial court's judgment and render a take-nothing judgment in favor of Joeris.

### BACKGROUND

Northside Independent School District (NISD) hired Joeris to be the general contractor for construction of Dr. Folks Middle School. Joeris contracted with an independent contractor Leal Welding & Erection (Leal Welding) to conduct steel erection necessary for construction of the project. Plaintiff Cumpian was an employee of Leal Welding.

On May 29, 2012, Cumpian and his coworker Armando Gonzalez were on the jobsite installing the last of several steel staircase frames. Leal Welding had previously used a crane to move and install the staircase frames; however, on this day, the crane was not on the job site. Instead, Gonzalez used a forklift to install the final staircase frame and attempted to secure the staircase frame to the forklift by using nylon straps. After a failed attempt and strap adjustment, Gonzalez again attempted to lift the staircase frame with the forklift, when it fell from the forklift and landed on Cumpian's foot. Cumpian's foot was crushed and required two surgeries over the course of a two-week hospitalization. Eventually, Cumpian's injuries necessitated amputation of the toes on his left foot.

Cumpian brought suit against Joeris asserting causes of action for negligence and gross negligence. Cumpian sought exemplary damages. Joeris designated Leal Welding as a responsible third party and moved for a bifurcated trial of any exemplary damages.

In his petition, Cumpian asserted a negligent-activity cause of action. Cumpian lists thirteen acts or omissions of Joeris which he contends support this cause of action. These thirteen acts or omissions fall within two general allegation categories: (1) Joeris failed to keep the jobsite safe by failing to properly ensure all work was performed pursuant to federal and company safety regulations; and (2) Joeris failed to keep the jobsite safe by "hiring and utilizing" Gonzalez when it knew of his previous safety violations on other jobsites but failed to monitor and supervise his actions.

The case proceeded to a nine-day trial. Cumpian plead and presented his negligence allegations under a negligent-activity theory, not a premises-defect theory, and jury questions were submitted to the jury on only a negligent-activity theory. The jury returned a verdict finding Joeris and Leal Welding were negligent, apportioning 80% of fault to Joeris and 20% of fault to Leal Welding. The jury determined Cumpian was not negligent. The jury assessed damages as well as exemplary damages based upon determination that Joeris was grossly negligent.

The trial court denied Joeris's motion for judgment notwithstanding the verdict (JNOV) and motion for new trial. Joeris perfected this appeal.

### ANALYSIS

Joeris appeals the trial court's judgment arguing: (1) the record does not support liability based upon a general negligence theory because the undisputed evidence shows Joeris did not control Leal Welding's work, and Joeris was not aware of Cumpian or Gonzalez's injury-causing activity, and therefore, Joeris owed no duty to Cumpian; (2) the evidence conclusively shows Cumpian and Gonzalez were the only negligent parties who caused the injury; (3) Cumpian's only viable cause of action was a premise-defect theory, not the submitted negligent-activity theory, and therefore, Cumpian waived the premises-

defect claim by failing to plead and present it; (4) alternatively, *Casteel* error in the submission of two jury questions mandates reversal; (5) Chapter 95 of the Texas Civil Practice and Remedies Code precludes liability; (6) the individual and cumulative effect of the trial court's harmful evidentiary errors mandates new trial; (7) the trial court erred by awarding exemplary damages; and (8) the trial court erred by allowing unsupported and inaccurate jury argument on Joeris's net worth.

We begin our analysis with the first argument, i.e. whether Joeris held a duty as a matter of law, because it is a dispositive issue.[1]

### Whether Joeris held a duty as a matter of law

#### Applicable Law

■ To prevail on a general negligence cause of action based in any theory of liability, a plaintiff must prove three essential elements: the existence of a legal duty, breach of that duty, and damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). The threshold inquiry is the existence of a duty, which is a question of law for the courts to decide from the essential, undis-puted facts surrounding the occurrence in question. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009); *see also Sanders v. Herold*, 217 S.W.3d 11, 15 (Tex. App.–Houston [1st Dist.] 2006, no pet.). The existence of duty is also a question of law when the evidence conclusively establishes the pertinent facts or when reasonable inferences can be drawn from those facts, as in this case. *See Bennett v. Span Indus., Inc.*, 628 S.W.2d 470, 474 (Tex. App.–Texarkana 1981, writ ref'd n.r.e.); *City of Alton v. Sharyland Water Supply Corp.*, 402 S.W.3d 867, 875 (Tex. App.–Corpus Christi 2013, pet. denied). In such instances, appellate courts review *de novo* a determination regarding whether a legal duty is owed. *Nabors Drilling*, 288 S.W.3d at 404; *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 459 (Tex. App.–Dallas 2007, pet. denied).

■ In a suit brought under the premises-liability umbrella of negligence (either negligent-activity or premises-defect), ordinarily, a general contractor holds no duty to prevent harm to others absent certain special relationships or circumstances. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). One of these "special relationships or circumstances" is

---

1. The parties presented on appeal in-depth briefing and argument on the issue whether this is a negligent-activity or premises-defect case under the premises liability umbrella because only the negligent-activity cause of action was plead and presented to the jury. In situations such as this, when a general contractor is sued by an independent contractor's employee, analysis to determine the existence and/or the scope of the independent contractor's duty is the same whether the cause of action asserted is one of negligent activity or premises defect. *See Kalinchuk v. JP Sanchez Constr. Co.*, 04–15–00537–CV, 2016 WL 4376628, at *3 (Tex. App.–San Antonio Aug. 17, 2016, no. pet. h.) (mem. op.); *compare Del Lago Partners Inc.*, 307 S.W.3d 762, 767 (Tex. 2010) (applying risk-utility balancing factors to determine question of duty in premise defect case) *with Gonzales v. O'Brien*, 305 S.W.3d 186, 189 (Tex. App.–San Antonio 2009, no pet.) (applied risk-utility balancing test in negligent-activity case). Consequently, determination of the primary contested appellate issue whether this is a negligent-activity or premises-defect cause of action is not necessary to determine whether Joeris held a legally cognizable duty or the scope of any duty. Because the duty issue is dispositive, we do not address the parties' dispute whether this is a negligent-activity or premises-defect case, and this court's conclusion on the duty issue is not affected by and has no bearing on the issue whether these facts support a negligent-activity or a premises-defect cause of action.

between a general contractor and any invitee, which includes the employee of an independent contractor. *See Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985); *Kalinchuk*, 2016 WL 4376628, at *2. In this context, the well-established rule is: a general contractor must use reasonable care to make and keep the premises safe; however, a general contractor has no duty to ensure an independent contractor safely performs its work. *Redinger*, 689 S.W.2d at 418; *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998); *Arias v. MHI P'ship, Ltd.*, 978 S.W.2d 660, 662 (Tex. App.–Corpus Christi 1998, pet. denied).

In *Redinger v. Living, Inc.*, the Texas Supreme Court evaluated this no-duty general rule and established an exception in a situation in which the general contractor exercises " 'some control over the manner in which the independent contractor's work is performed.' " *Redinger*, 689 S.W.2d at 418. The *Redinger* court held that if the general contractor exercises control over the means or manner of the independent contractor's general operations, then an exception to the no-duty general rule arises. *Id.* Under this exception, the general contractor must exercise reasonable care in its supervision of the subcontractor's activity "so as to prevent the work which he has ordered to be done from causing injury to others." *Id.*

A primary dispute in this case pertains to the *Redinger* exception to this no-duty general rule. In this case, Cumpian specifically asserts liability based upon Joeris's failure to enforce, or otherwise ensure compliance with, safety regulations and based upon Joeris's failure to monitor Gonzalez's activity to ensure his compliance with the safety regulations. Unlike *Redinger*, in which the plaintiff alleged liability arose from the general contractor's control over the independent contractor's

*general operations*, Cumpian's negligence allegations in this case focus on Joeris's *promulgation and enforcement of safety regulations*. Thereby, following *Redinger*, disposition of this issue whether Joeris held a duty to Cumpian under the theory presented in this case is clearly guided by the Texas Supreme Court's decision in *Hoechst–Celanese Corp. v. Mendez* and the cases that follow.

In *Hoechst–Celanese Corp. v. Mendez*, the Texas Supreme Court specifically addressed the question: "What is a [general contractor's] duty to an independent contractor's employees when the [general contractor] requires the contractor to observe general workplace safety guidelines?" *See Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 355. The court began by noting the no-duty general rule, as well as the equally well-established *Redinger* exception to this no-duty general rule which may arise when the general contractor exercises " 'some control over the manner in which the independent contractor's work is performed.' " *See id.* at 356. The court then recognized numerous appellate decisions which strictly followed the no-duty rule when the negligence allegations focus on a general contractor's enforcement of safety regulations. All of the cited cases held a general contractor does not incur a duty of care by requiring its independent contractor to comply with the general contractor's standard safety practices and applicable laws. *Id.* at 357 (citing *Davis v. R. Sanders & Associates Custom Builders, Inc.*, 891 S.W.2d 779, 782 (Tex. App.–Texarkana 1995, no writ); *Campbell v. Adventist Health System/Sunbelt, Inc.*, 946 S.W.2d 617, 623 (Tex. App.–Fort Worth 1997, no writ); *Welch v. McDougal*, 876 S.W.2d 218, 223 (Tex. App.–Amarillo 1994, writ denied); *Good v. Dow Chem. Co.*, 945 S.W.2d 877, 882 (Tex. App.–Houston [1st Dist.] 1997, no writ)).

 Contrary to these cited opinions, however, the Texas Supreme Court concluded the "better view" is to analyze a general contractor's specific actions of promulgating and enforcing safety regulations within the same general framework as that established in *Redinger. Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 357. Under this framework, a court must focus its duty analysis on the nexus between the general contractor's control and the condition or activity that caused the injury, such that the scope of a general contractor's duty to an independent contractor is commensurate with the control it holds. *Id.* at 355–57. The more detailed the general contractor's control over the independent contractor's work, the greater is the responsibility for any injuries that occur as a result of this control. *Id.* In the context of the promulgation and enforcement of safety regulations, "the court's inquiry must focus on who had specific control over the safety and security of the premises, rather than the more general right of control over operations." *Id.* at 357. Specifically, the "supervisory control must relate to the condition or activity that caused the injury." *Id.*

Therefore, in *Hoechst–Celanese v. Mendez*, the Texas Supreme Court opened the door to a possible exception to the strictly-construed, no-duty general rule in the circumstance in which a general contractor holds the right to control the promulgation and enforcement of safety regulations. The court held that, in itself, a general contractor's right to control jobsite safety or to require an independent contractor's compliance with safety regulations does not impose an unqualified duty of care to ensure the independent contractor's employees "do nothing unsafe." *Id.* at 357–58; *see also Hanna v. Vastar Res., Inc.*, 84 S.W.3d 372, 377 (Tex. App.–Beaumont 2002, no pet.). However, a general contractor which promulgates safety rules and maintains

control to enforce these safety requirements might assume a *narrow* duty of care commensurate with the extent of the control it maintains. *Id.* at 357 (emphasis in original). Thereby, the court followed the analysis framework as established in *Redinger*, in which it is alleged a general contractor controls the independent contractor's general operations, and held a general contractor that promulgates and enforces safety regulations assumes a narrow duty to ensure that its rules and regulations are reasonably safe and do not increase the probability or severity of injury. *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 357–58.

Finally, the *Hoechst–Celanese v. Mendez* court recognized two situations in which the exception to the no-duty rule may arise, and a general contractor which promulgates and enforces safety rules may incur a duty beyond that of just ensuring that its rules and regulations are reasonably safe and do not increase the probability or severity of injury. *Id.* The court defined these situations and the duty incurred in each situation, stating: (1) if the general contractor is aware an independent contractor routinely ignores applicable safety guidelines or company regulations, then it "may owe a duty to require corrective measures to be taken or cancel the contract"; or (2) if the general contractor gives on-site orders or directs the manner of performance in the injury-causing activity that is contrary to the safety regulations, the general contractor must otherwise protect workers from hazards associated with the act. *Id.* at 357.

 In sum, under *Hoechst–Celanese Corp. v. Mendez*, a general contractor which promulgates safety rules and maintains control to enforce these safety requirements may assume a *narrow* duty of care but that duty is commensurate with

the control it holds over the independent contractor and "'its supervisory control must relate to the condition or activity that caused the injury.'" *Id.* (quoting *Williams v. Olivo*, 952 S.W.2d 523 (Tex. 1997)). Accordingly, following *Redinger* and *Hoechst–Celanese v. Mendez*, to prove exception to the no-duty general rule arises in the event a plaintiff asserts negligence based upon a general contractor's failure to enforce safety regulations, a plaintiff must prove: (1) the general contractor held the right to control the safety regulations related to the specific injury-causing activity; **and** (2) the general contractor committed an act or omission that was not in accord with the *scope* of any such duty incurred through this control. *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 356–58; *Redinger*, 689 S.W.2d at 418–19.

*Prong One: Whether the general contractor held the right to control the safety regulations related to the specific injury-causing activity*

In the parties' appellate argument pertaining to the issue whether Joeris held a duty, the parties dispute whether Joeris possessed control over the means or manner of Leal Welding's general operation. However, Cumpian's asserted basis of liability is not that Joeris was negligent in controlling the general operations of Leal Welding's work to which this argument is relevant. Instead, Cumpian's asserted basis of liability is Joeris's omission in failing to enforce and ensure compliance with safety regulations or to otherwise monitor Gonzalez's behavior, contending such enforcement would have prevented Gonzalez and Cumpian from committing the injury-causing act.

The court in *Hoechst–Celanese v. Mendez* directed that in the situation in which the alleged liability arises from a general contractor's promulgation of safety regula-tions, the relevant inquiry does not focus on the general contractor's general right of control over the independent contractor's operations, as in *Redinger*. *Hoechst–Celanese v. Mendez*, 967 S.W.2d at 357. Rather, inquiry must focus, first, on the issue whether the general contractor held the right to control the promulgation and enforcement of safety regulations. *Id.* Therefore, based upon the theory in which this case was presented, the parties' dispute whether Joeris held a broader control over all of Leal Welding's work is not relevant to the salient issue created by the specific basis of Cumpian's assertion of liability. *See id.* (citing *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993)).

"A party can prove right to control in two ways: first, by evidence of a contractual agreement; and second, by evidence that the general contractor actually exercised control over the manner in which the independent contractor's work was performed." *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002); *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999). However, this court need not review whether Joeris held the requisite control as established in a contract or by its exercise of actual control because it is undisputed that Joeris possessed the right of control to promulgate, enforce and ensure compliance with safety regulations.

Thus, determination whether Joeris held a duty turns on the second requisite prong: whether Joeris committed an act or omission that was not in accord with the scope of any such duty incurred through this control. *See Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 356–57.

*Prong Two: Scope of Duty*

Cumpian's allegations of Joeris's negligent acts or omissions in his petition and appellate brief fall within the situations described in *Hoechst–Celanese v. Mendez* in which a general contractor may incur a

duty beyond just ensuring its safety rules and requirements unreasonably increased the probability and severity of injury.[2] Specifically, Cumpian contends Joeris incurred a legal duty to (1) take corrective measures to ensure Gonzalez worked in a safe manner based upon its knowledge of Gonzalez's past violations; (2) to ensure Gonzalez and Cumpian complied with OSHA and Joeris's safety regulations; and (3) to protect Cumpian from work hazards created by Dale Nieder's instruction to another of Leal Welding's employees, Victor Rapalo.

**a. Contention One: Joeris failed to take corrective measures to ensure Gonzalez worked in a safe manner based upon its knowledge of Gonzalez's past violations**

█ Cumpian asserted at trial and on appeal that Joeris held a duty to ensure his safety because its employees knew Gonzalez was a safety risk, yet Joeris allowed Gonzalez to work on this jobsite without the supervision of a safety monitor. Cumpian alleges Joeris knew Gonzalez was a safety risk because Gonzalez had previously failed to follow its safety protocol on other job sites, and consequently, Joeris had previously removed him from a job site. Cumpian contends Joeris had the authority to assign a full-time safety monitor to Gonzalez, and had done so on a previous job; however, Joeris contracted with Leal Welding to work on this project without imposing any requirement that it assign a safety monitor to Gonzalez. Based upon this knowledge of previous violations of safety regulations, Cumpian contends Joeris held a duty to take corrective measure, as recognized in *Hoechst–Celanese v. Mendez.*

As previously stated, in *Hoechst–Celanese v. Mendez,* the Texas Supreme Court concluded a general contractor "who is aware that its contractor routinely ignores [safety regulations] may owe a duty to require corrective measures to be taken. ...." *Hoechst–Celanese v. Mendez,* 967 S.W.2d at 357. In this situation, "[w]here an injury is caused by a subcontractor's routine disregard of safety guidelines and policies, a *Mendez* duty of care arises if the general contractor exercised control over the safety procedures related to the injury." *Perez v. Embree Const. Group, Inc.,* 228 S.W.3d 875, 881 (Tex. App.–Austin 2007, pet. denied). Following *Hoechst–Celanese v. Mendez* when a party asserts a duty arises based upon a general contractor's knowledge of an independent contractor's routine failure to follow safety regulations, to cross the threshold into the exception to the no-duty general rule, the general contractor must be aware of the independent contractor's violation of safety regulations on the jobsite and must be aware of the specific injury-causing activity before the injury occurred. *See, e.g., Dow Chem. Co.,* 89 S.W.3d at 609 (holding that the presence of general contractor's safety representatives on job site was insufficient to establish control where representatives did not specifically approve or have knowledge of any dangerous act by subcontractor); *Perez,* 228 S.W.3d at 881; *Gomez v. Charter Builders, Ltd.,* 10-10-00415-CV, 2012 WL 662321, at *5 (Tex. App.–Waco Feb. 29, 2012, pet. denied) (mem. op.) (holding plaintiff must establish defendant was aware that a co-worker routinely ignored safety standards which lead to plaintiff's death.); *Victoria Elec. Co-op., Inc. v. Williams,* 100 S.W.3d 323,

**2.** Cumpian never asserted at any time during the trial court proceedings argument that Joeris's promulgated safety requirements and procedures unreasonably increased the prob-

ability and severity of injury to Cumpian. Therefore, it was not necessary for Joeris to negate this allegation. *See Dow Chem. Co.,* 89 S.W.3d at 611.

330 (Tex. App.–San Antonio 2002, pet. denied) (holding plaintiff did not demonstrate Victoria Electric was aware that Urban "routinely ignored" safety guidelines related to the injury-causing activity and, consequently, had the duty to "require corrective measures be taken.").

The court in *Dow Chemicals* stated, the Texas Supreme Court "ha[s] never concluded that a general contractor actually exercised control . . . where . . . there was no prior knowledge of a dangerous condition and no specific approval of any dangerous act." *Dow Chem. Co.*, 89 S.W.3d at 609; *see also Gomez v. Charter Builders, Ltd.*, 2012 WL 662321, at *5. Therefore, to fall within the exception to the no-duty general rule, a general contractor must have actual knowledge, not constructive knowledge, of an independent contractor's safety violations. *See Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 357–58; *see also Dow Chem. Co.*, 89 S.W.3d at 609; *Victoria Elec. Co-op., Inc.*, 100 S.W.3d at 330. In addition, any safety violation of which the general contractor has actual knowledge must pertain specifically to the activity that caused the injury. *See Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 357–58; *see also Dow Chem. Co.*, 89 S.W.3d at 609; *Victoria Elec. Co-op., Inc.*, 100 S.W.3d at 330.

Because the existence of a legal duty is a question of law to be determined from the facts surrounding the occurrence in question, this court must examine the facts surrounding the accident that caused Cumpian's injuries and, specifically, Joeris's control over the safety regulations particular to that incident. *Nabors Drilling*, 288 S.W.3d at 404.

Here, the parties do not dispute, and the testimony of Joeris employees does show, that employees of Joeris did have knowledge of Gonzalez's previous safety violations on other jobsites. The Joeris employees who testified stated they did not want Gonzalez on this job due to his previous safety violations. However, the testimony of these employees, of Cumpian himself and of Cumpian's witnesses does not address whether Joeris had knowledge of *any* safety violations while Gonzalez was on *this* job or that any employee of Joeris knew Gonzalez and Cumpian were attempting to secure the staircase to the forklift using only nylon straps. In fact, the undisputed testimony, and Cumpian's testimony, conclusively established Joeris did not have knowledge of Gonzalez and Cumpian's specific injury-causing activity.

Further, lack of any factual dispute on the issue whether Joeris had actual knowledge of Gonzalez's violations of safety regulations while on the Dr. Folks Middle School jobsite is demonstrated through the testimony of: Dale Nieder, Joeris's Project Manager; Mark Bakeman, Joeris's safety representative; Cumpian and; Victor Rapalo, another employee of Leal Welding. This testimony conclusively establishes as a matter of law that Joeris did not possess the requisite actual knowledge to incur a duty to take corrective measures.

Nieder testified that use of a forklift was an acceptable method to move and install the staircase frame; however, a specific boom attachment should be used to do so safely. Nieder testified he did not know Gonzalez and Cumpian were working during the lunch hour and did not know they were attempting to fasten the staircase frame to the forklift with nylon straps. Nieder testified he did not "witness any part of all of the events that led to Mr. Cumpian getting hurt." Nieder did not testify that he had knowledge of any safety violations committed by Gonzalez on this jobsite, nor that he was aware that Gonza-

lez violated any safety regulations at the time of the accident.

Bakeman testified that he had removed Gonzalez from a previous jobsite, and he did not want Gonzalez on this jobsite due to Gonzalez's neglect of safety regulations. Bakeman further testified he was not aware that Gonzalez was on this jobsite, and that due to his other duties, he was not at the jobsite on a daily basis. Therefore, Bakeman did not testify that he had knowledge of any safety violations committed by Gonzalez on this jobsite, nor that he was aware that Gonzalez violated any safety regulations at the time of the accident.

Cumpian testified that he took his instruction and direction from Gonzalez. Specifically, Cumpian testified that Nieder was in the vicinity, but no one from Joeris was at the scene directing he and Gonzalez in securing and moving the staircase frame. Cumpian testified Gonzalez made the decision to attempt to fasten the staircase frame to the forklift using the nylon straps, and Gonzalez placed the straps around the staircase frame. Cumpian testified he and Gonzalez moved the staircase frame during the lunch break. Cumpian did not testify regarding Joeris's knowledge of any safety violations committed by Gonzalez on this jobsite, nor to Joeris's awareness that Gonzalez and Cumpian violated any safety regulations at the time of the accident.

Rapalo testified that the forklift used was Joeris's, but Rapalo did not testify that anyone from Joeris knew of or approved of Gonzalez and Cumpian's attempt to fasten the staircase frame with nylon straps. While Rapalo did testify that Joeris employees were on the jobsite and in the vicinity of the accident, he also testified that "[t]he Joeris guys started showing up" after the accident happened. Rapalo did not testify that these Joeris employees knew of the injury-causing activity. Rapalo further testified that he considered Gonzalez to be a risk taker and that Gonzalez had been removed from other jobsites for this reason. However, Rapalo did not testify regarding any safety violations committed by Gonzalez on this jobsite, nor to Joeris's awareness that Gonzalez violated any safety regulations at the time of the accident.

Thus, the undisputed testimony demonstrates only that Joeris was aware Gonzalez had violated safety regulations on other jobs, to such a degree to require his removal; however, the testimony does not address the issue whether Joeris was aware that Gonzalez routinely ignored safety guidelines on this job or committed any violations or unsafe conduct specific to the injury-causing activity. The undisputed testimony demonstrates no one from Joeris was at the scene of the accident and no one from Joeris was aware that Gonzalez and Cumpian were attempting to fasten the staircase frame to the forklift using nylon straps.

Because the undisputed facts and testimony conclusively demonstrate Joeris was not aware that Gonzalez routinely ignored safety guidelines on this job and was not aware that Gonzalez and Cumpian were engaging in unsafe behavior, as a matter of law, Joeris did not have a duty to "require corrective measures be taken" as established in *Hoechst–Celanese v. Mendez. See Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 357–58; *see also Dow Chem. Co.*, 89 S.W.3d at 609; *Perez*, 228 S.W.3d at 881; *Victoria Elec. Co-op., Inc.*, 100 S.W.3d at 330; *Gomez*, 2012 WL 662321, at *5. Therefore, Cumpian's argument that Joeris incurred a duty based upon its knowledge of Gonzalez's past safety violations must fail.

The dissent formulates its conclusion based upon Cumpian's assertion that Joeris created a dangerous condition by allow-

ing Gonzalez on the jobsite. We do not ignore this assertion, but instead, conclude it is subsumed within Cumpian's argument that Joeris failed to take proper and reasonable corrective measures. Thereby, this argument fails for the same reason: Joeris did not incur a heightened duty beyond that enumerated in *Hoechst–Celanese v. Mendez*. That is, Joeris did not incur a duty to ensure Leal Welding's employees performed their work in a safe manner based upon its knowledge of Gonzalez's safety violations on other jobs.

**b. Contention Two: Joeris failed to ensure Gonzalez and Cumpian complied with safety regulations**

Cumpian asserted at trial and on appeal that Joeris held a duty to ensure his safety because Joeris knew Gonzalez and Cumpian were violating safety regulations pertaining to installation of the staircase frames, yet failed to correct the action, or that Joeris tacitly approved of the conduct by failing to take action. Again, Cumpian asserts that because Joeris was aware of, or should have been aware of, the safety-regulation violation, it incurred a duty to ensure Cumpian's safety or to protect him from hazards associated with the act.

As in the previous discussion, for a general contractor to incur the narrow duty recognized in *Hoechst–Celanese v. Mendez*, it must be aware of the specific activity in violation of the safety regulations that caused the injury. *See Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 357–58; *see also Dow Chem. Co.*, 89 S.W.3d at 609; *Victoria Elec. Co-op., Inc.*, 100 S.W.3d at 330. A general contractor's promulgation of safety regulations, alone, is insufficient to incur a duty. *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 357–58. The general contractor must be aware of the specific act that caused the injury, but failed to stop it. *See id.*; *Arias*, 978 S.W.2d at 663.

Thus, as previously discussed, the undisputed facts and testimony that pertain to the question of law whether Joeris held a duty demonstrates only that Joeris was aware Gonzalez had violated safety regulations on other jobs; however, the testimony does not address the issue whether Joeris knew that Gonzalez was engaging in any violations or unsafe conduct at the time of the injury or specific to the injury-causing activity. Instead, the undisputed testimony demonstrates no one from Joeris was at the scene of the accident and no one from Joeris was aware that Gonzalez and Cumpian were attempting to fasten the staircase frame to the forklift using nylon straps.

Because the undisputed facts and testimony conclusively demonstrate Joeris was not aware that Gonzalez and Cumpian were engaging in unsafe behavior, as a matter of law, Joeris did not have a duty to protect Cumpian from hazards associated with the act, as established in *Hoechst–Celanese v. Mendez*. *See Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 357–58; *Arias*, 978 S.W.3d at 663; *Gomez*, 2012 WL 662321, at *5. Therefore, Cumpian's argument that Joeris incurred a duty to ensure his safety based upon its knowledge or constructive knowledge of Gonzalez and Cumpian's dangerous activity must fail.

**c. Contention Three: Joeris directed and controlled the situation in which Cumpian was injured**

Cumpian asserted at trial and on appeal that Joeris held a duty to ensure his safety because Nieder knew Gonzalez and Rapolo had installed the first staircase using the forklift, but ordered Rapolo to finish the welding on the first staircase, thereby leaving no one but Cumpian to help Gonzalez move the second staircase. Cumpian contends this direction estab-

lished sufficient control over the injury-causing activity to impose a duty on Joeris to keep Cumpian safe.

Rapolo testified that immediately following a mandatory safety meeting, Nieder asked Rapalo if the welding on the first staircase installed earlier that morning was complete. When Rapalo responded "No", Nieder asked him, "[c]ould you please get it done? Because I'm having cement trucks coming in and they're going to pour the main staircases, so I would like to get that poured."

Cumpian testified Joeris did not exercise control over the manner in which he and Gonzalez chose to install the staircase, stating instead that Gonzalez instructed him what to do and how to help in moving the staircase with the forklift. Cumpian stated no one from Joeris was on the scene "telling [me] or Armando how to secure the stairs onto the forklift."

In *Lee Lewis Construction*, the Texas Supreme Court established the control necessary for a general contractor to incur the duty enumerated in *Hoechst–Celanese Corp. v. Mendez* based upon its "on-site orders" or "detailed instructions on the means and methods to carry out a work order." *See Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778 (Tex. 2001). In *Lee Lewis Construction*, the testimony established the general contractor personally witnessed and approved of the specific injury-causing activity. *Id.* at 784. The testimony also indicated the general contractor knew of and did not object to the independent contractor's act that was contrary to its safety regulations. *Id.* Based upon this specific control, the court held the general contractor incurred a duty to keep the independent contractor's employees safe from the hazards created by its direction or tacitly approved-of activity. *Id.*

In a similar case, *Hagins v. EZ Mart*, the Texarkana Court of Appeals analyzed *Lee Lewis Construction* and the control necessary for a general contractor to incur a duty when it controls compliance with safety regulations. *Hagins v. E–Z Mart*, 128 S.W.3d 383, 391 (Tex. App.–Texarkana 2004, no pet.). In *Hagins*, before the accident in question, the general contractor directed the independent contractor's employee to weld a bracket on a gas pipe and asked another to hang a door. After the accident, the general contractor instructed that rails be installed on the platform where the accident occurred and asked an employee to come down from the top of a ladder. *Id.* at 390–91. Although these facts presented some direct control by the general contractor, the court held the direction given was insufficient to establish the requisite control necessary for the independent contractor to incur the narrow duty enumerated in *Hoechst–Celanese Corp. v. Mendez. Id.* at 391. The *Hagins* court concluded the direction given was also not specific to the injury-causing activity. *Id.* at 391.

Therefore, for Joeris to have incurred any duty of care under the circumstances in this case, Joeris must have exercised control beyond mere general or supervisory control, extending its influence over Gonzalez and Cumpian's work such that a Joeris employee directed the action that caused the injury or that a Joeris employee was aware of the injury-causing activity to such a degree that Joeris tacitly approved. *See Lee Lewis Constr.*, 70 S.W.3d at 784; *Hagins*, 128 S.W.3d at 391. Similar to *Hagins*, the testimony presented conclusively established that Joeris was not exercising control over Cumpian or Gonzalez's work at the time of the accident, and Joeris was not aware of Cumpian or Gonzalez's actions in order to tacitly approve of the unsafe conduct. *See Hagins*, 128 S.W.3d at 391.

In addition, any alleged retention of control must relate to the specific activity that led to the accident. There must be a nexus between a general contractor's retained supervisory control and the condition or activity that caused the injury. *See Lee Lewis Constr.*, 70 S.W.3d at 784; *Hagins*, 128 S.W.3d at 390–91; *see also Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 357 (citing *Williams v. Olivo*, 952 S.W.2d 523 (Tex. 1997)). The courts' analyses in both the *Hagins* and *Lee Lewis Construction* cases require that the general contractor's control directly affect, cause, or relate to the complained-of injuries. *Lee Lewis Constr.*, 70 S.W.3d at 784; *Hagins*, 128 S.W.3d at 390–91.

Here, Nieder directed only that Rapalo finish the welding on another staircase installed that morning. Nieder's instruction for *Rapalo* to finish the welding is not evidence that Nieder exercised control over *Cumpian's* work. The instruction does not indicate that Nieder or Joeris controlled how the work was to be completed nor did the instruction provide specific direction. The testimony only refers to instruction to Rapalo, but does not refer to any instruction to Gonzalez or Cumpian directly regarding the specific manner or means in which they were to complete any task, specifically the action that caused Cumpian's injury. "Every general contractor has to 'tell' the subcontractor what to do, in general terms, and may do so without subjecting itself to liability." *Redinger*, 689 S.W.2d at 418. "Such right does not create a duty, nor expand the scope of the duty beyond that as expressed in *Hoechst–Celanese.*" *Arias*, 978 S.W.2d at 663.

Because the undisputed facts and testimony conclusively demonstrate Joeris did not direct or control the manner in which Gonzalez and Cumpian attempted to secure the staircase frame to the forklift, nor did Joeris specifically direct Cumpian's activity in this situation, Joeris did not have a duty to protect Cumpian from hazards associated with the act, as established in *Hoechst–Celanese v. Mendez. See Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d at 357–58; *Arias*, 978 S.W.2d at 663; *Gomez*, 2012 WL 662321, at *5. Therefore, Cumpian's argument that Joeris incurred a duty to ensure his safety based upon its direction of Rapalo must fail.

## CONCLUSION

Review of the record reveals Joeris held a right to promulgate and enforce safety regulations. However, Cumpian did not demonstrate or create a fact issue requiring jury determination whether Joeris was aware of the specific injury-causing violation but failed to take corrective action, or whether Joeris specifically directed or tacitly approved of the injury-causing safety violation. Thus, as a matter of law, the undisputed facts do not demonstrate that Joeris held a duty to take corrective measures or to otherwise protect Cumpian from work hazards created by his dangerous activity. Conversely, the undisputed facts demonstrate, as a matter of law, that Joeris did not hold a duty to Cumpian arising from Joeris's right to control the promulgation and enforcement of safety regulations. *See Hoechst–Celanese v. Mendez*, 967 S.W.2d at 357.

For these reasons, we sustain Joeris's argument that Joeris held no duty as a matter of law. This conclusion requires that we reverse the trial court's judgment and render judgment in favor of Joeris. Because there are no other issues that are necessary for final disposition of this appeal, we do not reach the remaining issues presented on appeal. *See* TEX. R. APP. P. 47.1.

Concurring Opinion by: Sandee Bryan Marion, Chief Justice

Dissenting Opinion by: Luz Elena D. Chapa, Justice

## CONCURRING OPINION

Sandee Bryan Marion, Chief Justice

I write separately because I disagree with some of the analysis in the majority opinion; however, I agree we are constrained to hold there is no exception here to the general rule that a contractor does not owe a duty to ensure that a subcontractor performs his work in a safe manner. The facts in this case fit within the general logical construct of the Texas Supreme Court's decisions discussing an exception to the general rule; however, to hold an exception applies here would require this court to go a step further than the analysis in those decisions. We would have to equate a general contractor's decision to not allow a subcontractor's employee to work on a job site to a "standard company policy" related to safety. Without further clarification from the Texas Supreme Court, I am unable to take that step.

In *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 357 (Tex. 1998), the Texas Supreme Court cited *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469 (Tex. 1985), to support its assertion that "an employer who is aware that a contractor routinely ignores applicable federal guidelines and standard company policies related to safety may owe a duty to require corrective measures to be taken or to cancel the contract." In *Tovar*, the standard company policy, and the contract between the parties, prohibited the subcontractor from using a kill line for a fill line on an oil well blowout preventer because it was an unsafe design. 692 S.W.2d at 470. The general contractor was aware the subcontractor used the kill line for the fill line in violation of this policy. *Id.* Nevertheless, the general contractor did not order the shutdown of operations despite its knowledge of the specific danger that could result. *Id.* Tragically, the use of the kill line for the fill line

allowed pressure to build up in the hole and caused the bit breaker and drilling mud to spew out of the mouth of the hole severely injuring Henry Tovar's chest, ribs, shoulder, legs, and back. *Id.* Because the general contractor was aware the subcontractor ignored a standard company policy related to safety and failed to take corrective measures, the Texas Supreme Court held the general contractor owed a duty to Tovar. *Id.*

Similarly, in *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 783–84 (Tex. 2001), the issue presented was whether the general contractor retained control over the fall-protection system used by a subcontractor's employee. Under the facts in that case, the standard company policy required the proper utilization of fall-protection equipment for safety purposes, and the general contractor's job superintendent was assigned the responsibility to ensure that the subcontractor's employees complied with this policy. *Id.* at 784. However, "[t]estimony indicated that [the job superintendent] personally witnessed and approved" the use of faulty fall-protection equipment. *Id.* Because the general contractor was aware the subcontractor was in violation of its standard company policy regarding the proper utilization of the fall-protection equipment, the Texas Supreme Court held the general contractor owed the subcontractor's employee a duty to require corrective measures to be taken. *Id.*

In the instant case, Joeris's safety director testified he reached a verbal agreement with the owner of Leal Welding, one of the subcontractors, that Armando Gonzalez, a Leal employee, would not be allowed to work on the project in question because he did not take safety seriously on prior jobs. The evidence also established that Joeris's job superintendent knew about this decision and also knew Gonzalez

was working on the project despite the verbal agreement. Finally, the evidence established that Rolando Cumpian was injured when Gonzalez used a forklift in an unsafe manner.

In order to hold Joeris had a duty under these facts, we would have to conclude that Joeris's safety director's decision not to allow Gonzalez to work on the project is equivalent to a "standard company policy" related to safety. This would require us to extend the analysis in *Tovar* and *Lee Lewis Const., Inc.* in which standard company policies regarding specific safety measures were violated. Absent further guidance from the Texas Supreme Court, I do not believe we can extend the law that far. Therefore, I must concur in the majority's conclusion that Joeris did not owe Mr. Cumpian a duty under the facts in this case.

## DISSENTING OPINION

### Luz Elena D. Chapa, Justice

The Opinion [1] glosses over the egregious facts of this case. Joeris General Contractors retained control over all safety aspects of the jobsite. It also retained control over two specific safety aspects: (1) Armando Gonzalez, a Leal Welding employee, would not be permitted on the jobsite because Joeris admittedly knew he had routinely ignored safety standards in the past, including unsafely operating heavy equipment; and (2) Joeris was responsible for enforcing its company policy that only certified forklift operators would be permitted to use Joeris's forklift. The day Rolando Cumpian was injured, Joeris instructed Leal Welding to complete the in-

stallation of a staircase before cement trucks arrived. Joeris gave Leal Welding this on-site order knowing Gonzalez was present, having the contractual authority to remove him from the jobsite, knowing Joeris had not verified that Leal Welding employees were certified forklift operators, and knowing Joeris's forklift was the only machine available to move the staircase for its installation.

Before the incident, Dale Nieder, Joeris's on-site superintendent who was responsible for supervising and disciplining Leal Welding's employees for safety violations, did not instruct Gonzalez to leave the jobsite, ensure Gonzalez was certified to operate the forklift, or supervise Gonzalez to ensure he took proper safety measures when operating the forklift. Instead, there is evidence that Nieder, after instructing Leal Welding to complete the installation of the staircase, walked toward another area of the jobsite and, as a result, did not see the exact manner in which Gonzalez failed to safely operate the forklift. The Opinion and Concurring Opinion do not specifically address Cumpian's argument that Joeris failed to exercise due care after creating a dangerous situation on the jobsite. Instead, the Opinion would hold Joeris owed no duty to Cumpian *because* Joeris failed to supervise Gonzalez and consequently lacked actual knowledge of exactly how Gonzalez's recklessness had manifested itself on that particular day and time. And the Concurring Opinion would hold Joeris owed no duty because there is no evidence that Gonzalez violated a standard company policy.

1. I refer to Justice Pulliam's concurrence as "the Opinion" and Chief Justice Marion's concurrence as the "Concurring Opinion" based on their respective designations. *See* BLACK'S LAW DICTIONARY 307, 1125 (8th ed. 2004) (defining a "concurrence" as a separate opinion explaining a vote to agree with the judgment in the case "through a different line of reasoning" than another opinion explaining the judgment and "majority opinion" as "[a]n opinion joined in by more than half of the judges considering a given case").

I would hold the facts of this case fall squarely within the "retained control" exception to the general rule that a general contractor owes no duty to a subcontractor's employees. This case also satisfies the Opinion's "retained control plus actual knowledge" standard Justice Hecht advocated in his concurring opinion in *Lee Lewis Construction v. Harrison*, 70 S.W.3d 778, 788–800 (Tex. 2001) (Hecht, J., concurring), as well as the Concurring Opinion's "standard company policy" requirement. The evidence at trial clearly explains why the jury found Joeris was not only negligent, but also grossly negligent and awarded $5 million in punitive damages. The judgment sets aside a jury verdict supported by the law and the evidence, awards Cumpian nothing for the loss of his toes due to Joeris's gross negligence, and supports a "perverse rule" that makes accidents more likely to occur in the future. *See id.* at 788, 793 (arguing we should avoid creating a "perverse rule" that increases risk to workers). I therefore respectfully dissent.[2]

## The "Retained Control" Exception To the General "No Duty" Rule

A general contractor generally "does not owe any duty to ensure that [a subcontractor] performs his work in a safe manner."

**2.** I would overrule Joeris's other "render issue" that chapter 95 precludes liability. *See Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 52 (Tex. 2015) (explaining chapter 95 does not apply to suit against a general contractor).

**3.** The supreme court has held that in the absence of actual control, a general contractor may owe a duty to a subcontractor's employees based on contractual control. *Diaz*, 9 S.W.3d at 803–04. If a court holds a general contractor owes a duty based on actual control, it need not address whether the general contractor owes a duty based on contractual control. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001). The Opinion concludes Joeris retained actual control, but the scope of its actual control did not

*Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998) (per curiam). However, a duty arises when a general contractor retains control over the subcontractor's work. *Id.* (citing Restatement (Second) of Torts § 414 (1965), as quoted in *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985)). A general contractor may retain control either through a contractual right of control or through actual control,[3] and its duty "is commensurate with the control it retains over the independent contractor." *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803–04 (Tex. 1999); *Mendez*, 967 S.W.2d at 357.

In *Mendez*, the Supreme Court of Texas explained a general contractor may owe a duty under the "retained control" exception:

1) When the general contractor "is aware that its contractor routinely ignores applicable federal guidelines and standard company policies related to safety," 967 S.W.2d at 357 (citing *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469, 470 (Tex. 1985) (per curiam));

2) When the general contractor gives an independent contractor an "on-site order," *id.* (citing *Redinger*, 689 S.W.2d at 418);

give rise to a duty. Under *Diaz* and *Lee Lewis Construction*, the Opinion should have addressed the parties' arguments regarding Joeris's contractual control, which is an alternative basis for Joeris's duty that would support the judgment. *See* Tex. R. App. P. 47.1 (requiring our opinions to "address[] every issue raised and necessary to final disposition of the appeal"); *see also Lee Lewis Constr.*, 70 S.W.3d at 800 (Jefferson, J., concurring) (noting, "If . . . liability cannot be based on actual control, we must determine whether there is some other basis for imposing liability," and arguing "the question of [the general contractor's] contractual right to control must be addressed").

3) When the general contractor "provides detailed instructions on the means or methods to carry out a work order," *id.* (citing *Enserch Corp. v. Parker*, 794 S.W.2d 2, 6 (Tex. 1990)); or

4) When the general contractor imposes safety requirements and procedures, the requirements and procedures must not unreasonably increase the probability and severity of injury. *Id.*

And in *Lee Lewis Construction*, the supreme court held the "retained control" exception is satisfied when a general contractor controls a safety aspect of the subcontractor's work and is aware of a safety violation. *See* 70 S.W.3d at 783.

### A. This case is (1) analogous to *Tovar* because Joeris knowingly approved a deviation from an agreed-to safety measure and (2) satisfies *Tovar*'s broader principle that a general contractor owes a duty when it is aware a subcontractor routinely violates safety standards.

In *Tovar*, the supreme court recognized a general contractor has a duty to take contractually authorized corrective measures when a general contractor has actual knowledge that an independent contractor has deviated from an agreed-to safety measure. 692 S.W.2d at 470. In that case, the general contractor and subcontractor agreed that, in drilling a well, "the kill line [w]ould not be used for a fill line on the blowout preventer." *Id.* The subcontractor deviated from the agreement by "us[ing] the kill line for a fill line, and [the general contractor] was aware of that deviation." *Id.* The general contractor retained the authority under the contract to "discontinue drilling in the event of [the subcontractor's] carelessness, inattention, or incompetency." *Id.* The general contractor did not exercise this right, and the subcontractor's employee was injured as a result of the deviation from the general contractor and subcontractor's agreement. *Id.* The supreme court held the general contractor owed a duty to take corrective measures or cancel the contract. *Id.*

Here, Joeris requested and Leal Welding agreed that Gonzalez would "not work on the project." Joeris made this request because it was aware of Gonzalez's "repetitive safety behavior issues." At previous jobsites, Joeris had reprimanded Gonzalez multiple times for violating safety standards. Joeris was concerned Gonzalez's presence at this jobsite would increase the risk of a serious accident resulting in injury or death. Leal Welding deviated from this agreement by assigning Gonzalez to work on the jobsite, and Joeris's on-site manager Nieder was aware Gonzalez was working on the jobsite in deviation from this agreement.[4] In Joeris's contract with Leal Welding, Joeris retained "the authority to remove any employee" due to safety concerns. Furthermore, Joeris had previously stopped Gonzalez's work and removed him from other jobs and here, im-

---

4. Although the Opinion states Bakeman testified he did not know Gonzalez was on the jobsite, the evidence established Joeris (through Nieder) did have actual knowledge Gonzalez was working on the jobsite. Victor Rapalo, a Leal Welding employee, testified Nieder approached him, Gonzalez, and Cumpian and asked whether they were done with the staircase, and then instructed them to complete the staircase. Nieder testified (as did Cumpian) that Gonzalez was at the safety meeting earlier that morning. Nieder also testified he saw Leal Welding install staircases before this incident, and Cumpian testified it was Gonzalez who had installed the staircases before this incident. Finally, Cumpian testified Gonzalez was working on the jobsite the entire time Cumpian was there, and Nieder testified he and his assistant superintendent generally supervised the Leal Welding employees.

mediately after the accident, "made sure [Gonzalez] got off the job." Because Joeris had actual knowledge that Leal Welding was deviating from an agreed-to safety measure by allowing Gonzalez to work on the jobsite, retained contractual control to remove Gonzalez from the jobsite, and exercised actual control to stop Gonzalez's work and remove him from the jobsite, Joeris owed Cumpian a duty to take corrective measures under *Tovar. See id.*

Although *Tovar* concerned a known deviation from a site-specific safety agreement rather than knowledge of numerous prior safety violations, the Supreme Court of Texas in *Mendez* stated the "retained control" exception would apply when the general contractor is "aware that its contractor routinely ignores applicable federal guidelines and standard company policies related to safety." *Mendez*, 967 S.W.2d at 357 (citing *Tovar*, 692 S.W.2d at 470). Here, it is undisputed Joeris was aware Leal Welding, specifically Gonzalez, had—according to Joeris's safety director Mark Bakeman—"repetitive safety behavior issues." The "repetitive safety behavior issues" to which Bakeman referred included conduct at several prior jobsites at which Joeris took corrective measures regarding Gonzalez.

- Bakeman testified about an incident on a prior jobsite when Gonzalez was improperly using a scissor lift to hoist heavy equipment.
- Bakeman testified there was an incident at Trinity University when Gonzalez was not using fall protection. He stated "it was discussed with [Gonzalez], and within minutes later, he was found to be not wearing fall protection again after being talked to

previously about it." Victor Rapalo, who had worked for Leal Welding, testified he was there when Bakeman came to the site and "tossed [Gonzalez] off the job." He stated Joeris later decided to allow Gonzalez back on the jobsite and hired a safety representative to monitor Gonzalez.

- Rapalo testified he and Gonzalez worked on another Joeris project at "Hidden Cove." He testified Gonzalez instructed him and other Leal Welding employees how to use a crane to lift a beam. The beam "slammed into the other beam and it caused that beam to come down." According to Rapalo, Bakeman "showed up ... because of the situation."
- Rapalo testified there was another incident while working on "a school on Judson." He testified Gonzalez wanted him and another worker "to get on top of these cement beams, tie off and pick up the joists [5] and walk them and set them into place one by one." Rapalo called Bakeman because he "knew it was dangerous"; the joists were too heavy and it was "not safe at all" to walk across cement beams with the joists. According to Rapalo, Bakeman arrived and "was able to stop that process." Rapalo testified, "Everyone that knows Mr. Gonzalez, it's either his way or the highway."

I would hold this case is directly analogous to *Tovar* [6] and this case falls squarely under the supreme court's explanation in *Mendez* of what satisfies the "retained control" exception.

---

5. Rapalo testified a joist is a long piece of steel "that holds roofing [or] decking together."

6. The primary difference between this case and *Tovar* is that in *Tovar* the general contractor and subcontractor agreed not to use a piece of equipment for a particular purpose and, here, the general contractor and subcon-

## B. Joeris owed a duty under *Redinger* because it gave Leal Welding an "on-site order."

Under *Redinger*, a general contractor has a duty to exercise reasonable care in supervising when the general contractor gives an independent contractor an "on-site order." *Mendez*, 967 S.W.2d at 357; *Redinger*, 689 S.W.2d at 418. In *Redinger*, a general contractor's superintendent "was preparing the site for a subcontractor to pour concrete." 689 S.W.2d at 417. When the concrete trucks arrived, several piles of dirt blocked their access to the work area. *Id.* The superintendent ordered a dirt-hauling subcontractor to move the dirt. *Id.* The dirt-hauling subcontractor used a tractor to move the dirt and the tractor injured another subcontractor's employee. *Id.* The supreme court held the general contractor owed the subcontractor's employee a duty because the general contractor retained control by directing a subcontractor to immediately move the dirt when other workers were only few feet away. *Id.* at 417–18. The dirt-hauling subcontractor's ability to move the dirt by safer means or to warn the other workers did not preclude the general contractor's duty to exercise reasonable care. *See id.*

Here, on the day of Cumpian's injury, Leal Welding's employees were required to attend an on-site safety meeting in the morning. After the meeting, Joeris's on-site manager approached Leal Welding's foreman, asked if "you guys" were done with the staircase, and informed him that cement trucks were on their way. According to the foreman, Cumpian was standing to his left and Gonzalez was "a few feet" to Cumpian's left. Joeris asked them to complete the installation of the staircase so that cement could be poured on all of the staircases that day. At Joeris's direction, Leal Welding started working to complete the installation of the staircase and Cumpian was injured while attempting to complete that task. Joeris gave Leal Welding an "on-site order" similar to the one given in *Redinger*. *See id.* The *Redinger* exception therefore applies.

The Opinion rejects the *Redinger* exception in this case, reasoning that "Cumpian specifically asserts liability based upon Joeris's failure to enforce . . . safety regulations." This misstates Cumpian's position; he does not assert liability based solely on Joeris's authority to promulgate and enforce safety regulations. Out of the thirteen different allegations of negligence in Cumpian's live pleading, only three were related to safety policies. Cumpian also alleged Joeris was negligent by failing to supervise on-site work involving dangerous machinery, which is a breach of the duty recognized under the facts of *Redinger*.

## C. Joeris also owed a duty under *Lee Lewis Construction* because Joeris retained control over all operations involving the use of Joeris's forklift.

The Opinion states, "In *Lee Lewis Construction*, the Texas Supreme Court estab-

---

tractor agreed not to use a particular worker on the jobsite. This distinction is legally insignificant because (1) both factual situations present a reasonably foreseeable risk of harm, and such foreseeability is "the foremost and dominant consideration" in a duty analysis, *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); and (2) in torts, a duty may arise when entrusting a person known to be reckless with heavy machinery, *see Schneider v. Esperanza Transmission Co.*,

744 S.W.2d 595, 596 (Tex. 1987). Cumpian's cause of action is not for the negligent hiring of Leal Welding as a subcontractor, but for Joeris's actual control, jointly with Leal Welding, over Gonzalez's access to the worksite. *Cf. Tavary v. Channel Terminal Corp.*, No. 01–97-00571-CV, 1998 WL 417945, at *3 (Tex. App.–Houston [1st Dist.] July 23, 1998, no pet.) (mem. op.) (holding general contractor who imposes access restrictions for safety concerns assumes "actual control").

lished the control necessary for a general contractor to incur the duty enumerated in *Hoechst–Celanese Corp. v. Mendez* based upon its 'on-site orders' or 'detailed instructions on the means and methods to carry out a work order.'" The Opinion would hold the element of duty in this context depends on the general contractor's "actual knowledge, not constructive knowledge, of an independent contractor's safety violations." This holding directly conflicts with the Restatement's explanation that a general contractor may be subject to liability "if he knows *or by the exercise of reasonable care should know* that the subcontractors' work is being" completed "in a way unreasonably dangerous to others." *See* RESTATEMENT (SECOND) OF TORTS § 414 cmt. b (emphasis added); BLACK'S LAW DICTIONARY 2004 (8th ed.), at 888 (defining "constructive knowledge" as "Knowledge that one using reasonable care ... should have."). Furthermore, I disagree with the Opinion's suggestion that *Lee Lewis Construction* impliedly overruled *Redinger* (which required due care in supervising the execution of an on-site order with no mention of actual or constructive knowledge) and heightened the standard for *Redinger*'s "on-site orders" exception. *Lee Lewis Construction* did not address the "on-site orders" exception in any manner, directly or indirectly. *See* 70 S.W.3d at 782–84. Instead, the supreme court in *Lee Lewis Construction* applied the "retained control" exception to a different set of facts. *See id.*

The Opinion appears to apply the heightened "retained control plus actual knowledge" standard Justice Hecht recommended in his concurring opinion in *Lee Lewis Construction. Id.* at 788–800 (Hecht, J., concurring). Chief Justice Phillips concurred in that case, noting the majority in *Lee Lewis Construction* "accurately articulate[d] and applie[d] current Texas common law," Justice Hecht's "views clearly constitute a change in Texas law," and his "position seems to have been adopted by only a small minority of American jurisdictions." *Id.* at 787 (Phillips, C.J., concurring). The Opinion in this case applies the same standard advocated by Justice Hecht, one which the supreme court has not adopted. *See id.* at 788–800 (Hecht, J., concurring).

I would hold this case is directly analogous to *Lee Lewis Construction* and even satisfies the heightened standard recommended by Justice Hecht.[7] In that case, a subcontractor's worker fell ten stories to his death and, in a wrongful death and survival action against the general contractor, a jury awarded $7.9 million in compensatory damages and $5 million in punitive damages. *Id.* at 781–82 (majority opinion). The supreme court majority held there was sufficient evidence of actual control over a particular safety aspect of the subcontractor's work because the general contractor assumed the responsibility to ensure the subcontractors' employees properly utilized fall protection equipment; approved of some fall protection equipment; and knew of and did not object to the workers' failure to use other fall protection equipment that would have prevented Harrison's fall. *Id.* at 784. It was undisputed the general contractor did not observe exactly how Harrison fell or know what safety measures he failed to take other than not using an independent lifeline. *Id.* at 782.

---

**7.** The facts of this case also satisfy the *Tovar*-based "contractual control plus actual knowledge" standard Justice Jefferson articulated in his concurring opinion. *Lee Lewis Constr.,*

*Inc.,* 70 S.W.3d at 800–01 (Jefferson, J., concurring) (characterizing *Tovar* as a "contractual control" case).

Cumpian argues Joeris controlled a specific safety aspect of Leal Welding's work involving forklift operations. The Opinion does not directly address this argument other than to generally hold Joeris owed no duty because Joeris did not supervise Gonzalez's use of the forklift. It is undisputed that Joeris assumed the responsibility over forklift operations on the site. Nieder testified anyone who wanted to use Joeris's forklift was required to be a certified forklift operator, complete a form, and ask Joeris for the key. It is also undisputed that Joeris knew Leal Welding employees occasionally used Joeris's forklift, and Joeris never ensured whether any of the Leal Welding employees were certified forklift operators. There is evidence the forklift Gonzalez used that day belonged to Joeris, and some evidence from which a jury could have reasonably inferred Gonzalez was not certified to operate a forklift.[8] Thus, the *Lee Lewis Construction* exception applies because Joeris retained control over all forklift operations, including Leal Welding's use of the forklifts, by establishing a procedure to control who could use a forklift on the jobsite and assuming responsibility for enforcing that procedure. *See id.* at 783. Because Joeris had actual knowledge of this specific safety violation, and this safety violation was a proximate cause of Cumpian's injury, the evidence in this case also satisfies Justice Hecht's heightened standard for a general contractor to owe a duty of care. *See id.* at 784 ("More than one act may be the proximate cause of the same injury.").

**D. It is undisputed Joeris and Leal Welding jointly retained control over all safety aspects of Leal Welding's work on the jobsite.**

If a general contractor retains control, its duty of care is commensurate with the control it retains over the subcontractor's work. *Lee Lewis Constr.*, 70 S.W.3d at 783; *Mendez*, 967 S.W.2d at 357. "[I]t is not enough that the [defendant] has merely a general right to order the work stopped." *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 607–08 (Tex. 2002). And unless there is a contractual provision giving the general contractor "the right to take action" in the event of a safety violation, merely having an on-site safety employee is insufficient to give rise to a general contractor's duty. *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 156–57 (Tex. 1999) (per curiam); *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999) (per curiam). "The rule ... is usually, though not exclusively, applicable when a principal contractor entrusts part of the work to subcontractors, *but himself or through a foreman superintends the entire job*." RESTATEMENT (SECOND) OF TORTS § 414 cmt. b. (emphasis added).

Applying this standard, this court held a general contractor owed a duty in *Lawson–Avila Construction, Inc. v. Stoutamire*, 791 S.W.2d 584, 589–91 (Tex. App.–San Antonio 1990, writ denied). In *Stoutamire*, just as in this case, the general contractor had been hired to a build a school; the subcontractor was in charge of welding; and the subcontractor's employees were injured by the use of heavy equipment. *Id.* at 589. This court considered evidence that the general contractor (1) had two on-site safety employees who were acting in a management or supervisory capacity; (2) had the authority to give on-site orders to subcontractors; (3) had the authority to stop work if the general contractor's superintendent observed a safety violation; (4) shared the "ultimate[ ] responsibility" for safety on the jobsite

---

8. Although this evidence was disputed, we must ignore contradicting evidence. *See*

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex. 2004).

with the subcontractors; and (5) had "the overall responsibility" for compliance with the requirements of the work. *Id.* at 589–91.

Here, there is evidence Joeris retained contractual control and exercised actual control over all safety aspects of the jobsite. Under the master contract between Joeris and Leal Welding, Joeris retained the contractual right to "remove any employee ... of [Leal Welding] from the project" if Leal Welding "fail[e]d to comply with [safety] policies and procedures." The master contract between Joeris and Leal Welding also provided Leal Welding's employees were required to attend safety meetings, which Joeris held on a weekly basis.

Joeris assigned at least three safety employees to the jobsite to monitor Leal Welding's conduct: Joeris's on-site manager and superintendent Nieder, his assistant superintendent, and Joeris's safety director Bakeman. Nieder testified he "was the senior on-site safety supervisor"; the subcontractors' foremen "answered to" him; the chain of command on the jobsite was important to maintain safety; and if he saw them "doing something unsafe, I'm going to stop them working right there and get their foreman." Bakeman testified his job duties as safety director included "enforc[ing] the safety rules and the safety regulations for a particular [jobsite]." Wesley Johnson, Joeris's director of training and risk management, testified "Bakeman's job as safety director in part was to observe the [jobsite], including the conduct of ... the employees of sub[contractor]s, to make sure those employees ... were performing their job in a safe manner dictated by the safety policies on the job." Joeris's Vice President of Operations John Casstevens testified Joeris and Bakeman, specifically, "shared responsibility [for overall jobsite safety] with everybody involved."

Joeris exercised actual supervisory control over all safety aspects on the jobsite by enforcing its safety policies and procedures through a disciplinary reprimand program. Bakeman testified if he observed subcontractors have repeated safety violations, he would warn them verbally, "[a]ction must be taken" for repetitive violations, and a written reprimand would be placed "in their file." Nieder testified he and his assistant wrote up three reprimands pertaining to Leal Welding employees "on this job." Johnson testified "written reprimands" were issued when there were either frequent or severe violations of safety policies and procedures. The safety citations advised the cited Leal Welding employee, "Please be advised that company policy prohibits tolerance of the aforementioned, and we are giving you this citation so that you may correct and not repeat the situation. Safety violations are subject to discipline depending on the severity of the violation."

In this case, there is evidence Joeris did more than simply have an on-site safety employee and the "general right" to order the work stopped. *Cf. Dow Chem. Co.*, 89 S.W.3d at 607–08; *Koch Ref.*, 11 S.W.3d at 156–57; *Coastal Marine Serv.*, 988 S.W.2d at 226. Joeris had the specific "right to take action" in the event of a safety violation. *See Koch Ref.*, 11 S.W.3d at 156–57 (suggesting a duty would be found in such a case). Not only did Joeris retain that authority and control, it exercised its authority and control on this particular jobsite on numerous occasions. Viewing the evidence in a light most favorable to Cumpian and drawing all reasonable inferences in his favor, Joeris retained control over all safety aspects on the jobsite. Joeris owed Cumpian a duty that is commensurate with the control it retained over Leal Welding's

work, which included Gonzalez's safety violations when completing the installation of the staircase. *See Lee Lewis Constr.*, 70 S.W.3d at 783; *Mendez*, 967 S.W.2d at 357.

### E. The Opinion supports a dangerous jobsite-safety precedent for subcontractors that is inconsistent with fundamental tort principles.

The Opinion excuses Joeris's conduct because Joeris did not have actual knowledge of the precise manner in which Gonzalez's known reckless conduct would manifest itself on the particular day and time when Cumpian was injured. But "[i]n determining whether the defendant was under a duty . . . foreseeability of the risk is the foremost and dominant consideration." *Greater Hous. Transp.*, 801 S.W.2d at 525 (internal quotes and citation omitted). "Foreseeability *does not require that a person anticipate the precise manner in which injury will occur* once he has created a dangerous situation through his negligence." *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (emphasis added). Such a requirement would encourage general contractors who have knowingly created dangerous situations on the jobsite to turn a blind eye to avoid actual knowledge of the precise manner in which workers' injuries occur. This is a "perverse rule" that makes serious accidents resulting in injury and death more likely to occur in the future. *See Lee Lewis Constr.*, 70 S.W.3d at 788, 793 (Hecht, J., concurring).

### F. None of the leading cases applying the "retained control" exception require a violation of a standard company policy; the evidence also establishes Gonzalez violated Joeris's standard company policy regarding use of its forklift.

I respectfully disagree with the Concurring Opinion's position that the "retained control" exception requires a violation of a standard company policy related to safety, rather than a site-specific safety agreement. In *Lee Lewis Construction, Tovar,* and *Redinger,* the supreme court held a general contractor owed a subcontractor's employee a duty without a violation of a standard company policy. *Id.* at 784 (majority opinion) (general contractor observed and expressly approved use of unsafe fall-protection equipment); *Tovar,* 692 S.W.2d at 470 (general contractor was aware subcontractor violated safety agreement contained in the drilling contract); *Redinger,* 689 S.W.2d at 418 (general contractor retained control by giving a subcontractor's employee an oral on-site order). The "standard company policies" language is from *dicta* in *Mendez* describing just one plausible application of *Tovar. See Mendez*, 967 S.W.2d at 357 (citing *Tovar* with a "see e.g." cite). *Mendez* does not hold the "retained control" exception requires a violation of a standard company policy, as opposed to a site-specific safety agreement as in *Tovar. See id.*

Even if the "retained control" exception does require a violation of a standard company policy, the evidence establishes Gonzalez violated Joeris's company policy regarding who may use Joeris's forklift. Specifically, Nieder testified:

Q. If a sub's employee is using the Joeris or the—or the—the orange Skytrak that Joeris rented for this job, they're doing it without the OSHA certification, forklift certification, they're violating Joeris' policy because Joeris' policy is no one's to get on that forklift unless they're forklift certified, correct?

A. Yes, sir.

There is evidence that Gonzalez was using Joeris's forklift and the Leal Welding employees' forklift certifications had expired.

Thus, there is evidence of a violation of a standard company policy.

## CONCLUSION

The proper application of the "retained control" exception deeply divides this court today, as it has in the past. Today, the proper application of this exception has spawned three separate opinions, and the judgment is inconsistent with a prior decision of this court in a case in which the general contractor retained the same level of supervisory control over the subcontractor as Joeris retained over Leal Welding. *See Stoutamire,* 791 S.W.2d at 589–91. In *Victoria Electric Cooperative, Inc. v. Williams,* this court sitting en banc reheard an appeal involving the "retained control" exception and decided the merits in a 4–3 decision. 100 S.W.3d 323, 325 (Tex. App.–San Antonio 2002, pet. denied) (en banc op. on reh'g). And in *Traylor Brothers, Inc. v. Garcia,* the supreme court appointed two visiting judges to assist this court in resolving a disagreement regarding the proper application of this exception. 49 S.W.3d 430, 432 (Tex. App.–San Antonio 2001, pet. denied) (en banc). *Traylor Brothers* was finally resolved in a 5–4 decision. *See id.; see also Laurel v. Herschap,* 5 S.W.3d 799, 800 (Tex. App.–San Antonio 1999, no pet.) (op. on reh'g) (rehearing issue regarding "retained control" exception).

In *Lee Lewis Construction,* Justice Hecht recommended that the supreme court "clarify the issue" regarding the "retained control" exception to the general "no duty" rule. 70 S.W.3d at 788–800 (Hecht, J., concurring). Chief Justice Phillips also expressed his "substantial misgivings about [the supreme court's] approach in suits against general contractors for injuries to a subcontractor's employees [because the court's] focus on the degree of the general contractor's 'retained control' has failed to provide either consistent or equitable results." *Id.* at 788 (Phillips, C.J., concurring). Based on the foregoing, I respectfully dissent and ask the Supreme Court of Texas to provide clarity in this area.